UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGELA M. KALTENBACH,

      Plaintiff,

    v.
                                  Civil Action 2:20-cv-4314
                                  Judge Sarah D. Morrison
                                  Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

    Plaintiff, Angela M. Kaltenbach, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income benefits ("SSI"). Pending before the Court is Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15) and the administrative record (ECF No. 12). For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's non-disability determination.

## I.    BACKGROUND

    Plaintiff protectively filed an application for benefits on August 21, 2017, alleging that she has been disabled since October 1, 2013. (R. at 174.) Plaintiff subsequently amended her alleged date of onset to July 31, 2017. (R. at 57.) Plaintiff's application was denied initially in November 2017, and upon reconsideration in May 2018. (R. at 80–94, 96–114.) On September 18, 2019, Plaintiff appeared without counsel at a hearing held by an Administrative Law Judge. (R. at 49–78.) A vocational expert ("VE") also appeared and testified. (*Id*.) On September 27,

2019, the ALJ issued a determination finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 26–48.) On June 22, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's non-disability determination as the Commissioner's final decision. (R. at 1–7.) Plaintiff timely commenced this action. (ECF No. 1.)

Plaintiff alleges that the ALJ erred when analyzing and weighing medical opinion evidence. Specifically, Plaintiff alleges that the ALJ improperly weighed the opinion from the state agency consultative examiner, Jessica Twehues, Psy.D. (ECF No. 13, at PageID # 582–87.) The Undersigned finds that this allegation of error lacks merit.

## II. THE ALJ'S DECISION

On September 27, 2019, the ALJ issued the non-disability determination. (R. at 26–48.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since July 31, 2017. (R. at 31.) At step two, the ALJ found that

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with stenosis and radiculopathy post laminectomy; degenerative joint disease of the left knee with history of fracture; chronic obstructive pulmonary disease (COPD); depression and anxiety. (R. at 31.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 32.)  Before proceeding to step four, the ALJ set forth Plaintiff's RFC, in pertinent part,[2] as follows:

> The claimant would be limited to simple, routine, repetitive tasks that did not require fast production rate or strict production quotas. She would be able to occasionally interact with co-workers, but no tandem or shared tasks, and she would not be required to engage in conflict resolution or supervising other employees. She would be able to have occasional interaction with supervisors and would be able to occasionally interact with the public, but not in a customer service capacity. Additionally, the claimant would be able to adapt to a work setting with infrequent changes.

(R. at 35.)

At step four, the ALJ determined that Plaintiff had no past relevant work history.  (R. at 42.)  The ALJ relied on testimony from the VE at step five to determine that in light of Plaintiff's age, education, work experience, and RFC, she was able to perform jobs that existed in significant numbers in the national economy.  (R. at 42–43.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act since July 31, 2017.  (R. at 43.)

---

[2] Because Plaintiff's challenge only involves her mental impairments, the Undersigned's discussion and analysis are limited to the same.

## I.    RELEVANT RECORD EVIDENCE

### A.    Plaintiff's Testimony

At the September 27, 2019, hearing, Plaintiff testified to the following facts.  Plaintiff started being treated for depression in approximately June 2013 when she went through a divorce and "other things."  (R. at 56.)  Plaintiff's last job involved folding towels and linens, counting them, tying them up, and setting them out.  (R. at 70.)  Plaintiff did not really understand her job even after working there for two years and people still had to try teaching her and explaining things to her because she lacked concentration.  (R. at 56, 57.)  Plaintiff missed work at that job a couple times a month because she did not feel like going due to her depression.  (R. at 70.)

Plaintiff also testified to the following facts.  Plaintiff was unable to work a full-time job because she could not be out in public very much or around people due to high anxiety and depression and back problems.  (R. at 57–58.)  She saw her primary care doctor, Dr. Collins Okolie, for her depression every three months.  (R. at 57–58.)  Plaintiff did not see a specialist for her depression because she did not want to "rewind and deal and talk about everything" related to her depression.  (R. at 69.)  Plaintiff took Remeron, Celexa, and Xanax.  (R. at 58.)  She spent most of her days inside and had not been outside her home more than ten times that summer.  (R. at 66.)  On a typical day, she would get up around 11, watch television, sit for a half hour, walk around the house a little bit, and then sit back down.  (R. at 67–68.)  She lived with her parents in their home and was responsible for cleaning her room and doing her own laundry.  (R. at 54, 68.)  Plaintiff did not go grocery shopping because she would get too anxious around people.  (R. at 70.)  Although she attended her son's basketball games, she would sit near the door so she could get up and leave and was not surrounded by people.  (R. at 71.)  Plaintiff

4

previously had a driver's license but after she was involved in a car accident while she was

uninsured, she never applied for a driver's license again.  (R. at 55.)

    **B.**    **Treatment Records**

    During a January 8, 2016, appointment, Plaintiff's anxiety was well controlled on Xanax

and Celexa.  (R. at 361.)  Plaintiff stated that her anxiety was doing okay on her current

medications and that she wanted refills.  (*Id*.)  Upon examination, she was alert, "oriented X3,"

in no acute distress, and non-toxic.  (*Id*.)

    Examinations on January 18, March 3, and July 8, 2016, found that Plaintiff was alert and

"oriented x3" and she had normal mood and affect.  (R. at 409, 360, 358.)

    Records from January 9, 2017, indicate that Plaintiff's anxiety was well-managed on

Xanax and that she was doing well with her depression on Celexa.  (R. at 355.)  Upon

examination, Plaintiff was alert, "oriented X3," well nourished, and well developed.  (R. at 356.)

    On January 19, 2017, Plaintiff denied having memory loss, difficulty concentrating,

language difficulties, auditory/visual hallucinations, or depressed mood.  (R. at 244–45.)

    On April 10, 2017, Plaintiff reported insomnia and sometimes having a hard time

sleeping at night.  (R. at 353.)  She also reported that her depression was doing okay with Celexa.

(*Id*.)  Upon examination, she was alert, "oriented X3," in no acute distress, well-developed, and

well-nourished.  (R. at 354.)

    At a July 1, 2017, ER visit for persistent vomiting, Plaintiff reported that she had a

history of depression and indicated that she would sometimes experience vomiting when she

would get more depressed.  (R. at 308.)  Upon examination, she had a normal affect but a

depressed mood.  (R. at 311.)  She denied any suicidal or homicidal ideations.  (R. at 312.)

On July 13, 2017, Plaintiff indicated that she slept well on Remeron and that her anxiety was doing okay on Xanax and Remeron but she needed her Xanax prescription refilled.  (R. at 350.)  Upon examination, Plaintiff was cooperative and "oriented X3."  (R. at 351.)

During an examination on July 15, 2017, Plaintiff had normal affect and mood although it was noted that she also seemed depressed.  (R. at 288, 291.)

On August 14, 2017, Plaintiff denied anxiety, depression, suicidal or homicidal thoughts, and auditory or visual hallucinations.  (R. at 263, 382.)  Upon examination, Plaintiff had normal affect and mood.  (R. at 266.)  She was also alert and "oriented X3." (R. at 383, 387.)  She did, however, appear anxious.  (R. at 387.)

On August 31, 2017, Plaintiff denied any memory loss.  (R. at 340, 377.)  Upon examination, she was cooperative, made good eye contact, and had normal mood and affect.  (R. at 340.)

On October 6, 2017, Plaintiff reported that she was sleeping well on Remeron, which she was taking for depression, and that her anxiety was controlled on Xanax.  (R. at 347.)  Upon examination, she was cooperative and "oriented X3."  (*Id*.)  On October 19, 2017, Plaintiff denied any memory loss.  (R. at 336.)

On December 29, 2017, Plaintiff's prescription for Xanax to treat her anxiety was refilled.  (R. at 344.)  Plaintiff reported that her sleeping was "okay" on Remeron.  (R. at 345.)  Upon examination, she was cooperative and "oriented X3."  (*Id*.)

During a March 8, 2018, appointment, Plaintiff was alert, "oriented X3," well nourished, and well developed.  (R. at 442.)

A May 2, 2018, examination found that Plaintiff was well developed, well nourished, in no acute distress, alert, "oriented X3," and that she had normal affect.  (R. at 462.)  She denied

having memory loss, difficulty concentrating, language difficulties, auditory/visual hallucinations, or depressed mood.  (R. at 463.)

On June 25, 2018, Plaintiff reported sleeping well on Remeron.  (R. at 473.)  At an appointment on March 28, 2018, Plaintiff indicated that she was on Xanax for her anxiety and that it helped her.  (R. at 440.)  Examinations at both appointments found that she was alert, "oriented X3," in no acute distress, well nourished, and well developed.  (R. at 474, 441.)

On March 29, 2018, Plaintiff denied having memory loss, difficulty concentrating, language difficulties, auditory/visual hallucinations, or depressed mood.  (R. at 466.)

Examinations on September 20, and December 17, 2018, and March 5, 2019, found that Plaintiff was alert, "oriented X3," in no acute distress, well nourished, and well developed.  (R. at 470, 477, 486.)

On March 13, 2019, Plaintiff denied having memory loss, difficulty concentrating, language difficulties, and auditory/visual hallucinations, but admitted having a depressed mood. (R. at 484.)

At a March 18, 2019, examination, Plaintiff denied experiencing drowsiness while taking Xanax for her anxiety.  (R. at 518.)  She reported that the Remeron that she took for depression and anxiety helped her sleep.  (*Id*.)  Upon examination, Plaintiff was alert, oriented, and cooperative; she had good eye contact, intact cognitive function, good judgment and insight, and clear speech; and Plaintiff's thought processes were logical and goal directed.  (R. at 519.)

At an appointment on June 13, 2019, Plaintiff denied having any side effects like drowsiness on Xanax.  (R. at 516.)  An examination found that she was alert, "oriented X3," in no acute distress, well nourished, and well developed.  (R. at 516.)

On December 26, 2019, and February 6, 2020, Plaintiff denied having memory loss, difficulty concentrating, or a depressed mood.  (R. at 16, 10.)

### C.      State Agency Consultative Reviewer, Dr. Twehues

On October 11, 2017, Plaintiff was examined by state agency consultative reviewer, Dr. Twehues.  (R. at 324–330.)  Dr. Twehues noted that during the examination, Plaintiff accurately followed all simple instructions but appeared "prone to mild to moderate forgetfulness with regard to instructions for complex, multi-step tasks due to some deficits with regard to her concentration."  (R. at 328.)  Dr. Twehues also wrote that she would expect Plaintiff to have "moderate difficulties sustaining focus for prolonged periods of time due to her experience of depression and anxiety" and that she expected Plaintiff's work pace to be "moderately slowed by depressive symptoms and anxiety."  (R. at 328–29.)  Dr. Twehues additionally noted that Plaintiff reported missing work up to once every two weeks at her most recent job, and that Plaintiff "appeared prone to higher than usual rates of absenteeism from work."  (*Id*.)  Dr. Twehue indicated that Plaintiff was "likely to present as withdrawn and appears prone to crying spells and panic attacks in workplace setting" and that she was "likely to present as hypersensitive to criticism."  (R. at 329.)   Dr. Twehues opined that "increased stress and pressure would likely increase depressive symptoms and anxiety and make it more difficult for her to persist on work related tasks," and that Dr. Twehues would expect Plaintiff to have "moderate to potentially severe limitations" with regard to her ability to respond appropriately to work pressures in a work setting.  (*Id*.)

### D.      State Agency Psychological Reviewers, Drs. Goldsmith and Edwards

On October 24, 2017, Plaintiff's file was reviewed at the initial level by state agency psychological reviewer Bruce Goldsmith, Ph.D.  (R. at 89–91.)  Dr. Goldsmith opined that

Plaintiff was "limited to simple task instructions." (R. at 90.) Dr. Goldsmith further opined that

Plaintiff was limited to simple tasks that are not fast paced or have unusual production demands.

(*Id*.) In addition, Dr. Goldsmith opined that Plaintiff was limited to occasional and superficial

interpersonal contact. (R. at 91.) Last, Dr. Goldsmith opined that Plaintiff was limited to routine

tasks with infrequent changes. (*Id*.) On February 6, 2018, Plaintiff's file was reviewed at the

reconsideration level by state agency psychological reviewer Joseph Edwards, Ph.D., who

opined the identical limitations. (R. at 110–11.)

## II.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must

"take into account whatever in the record fairly detracts from [the] weight" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III.  ANALYSIS

Plaintiff alleges that the ALJ erred when analyzing the opinion from the state agency consultative examiner, Dr. Twehues.  That allegation of error is not well taken.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 416.945(a)(1) (2012).  A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file.  *Id*.  The governing regulations[3] describe five different categories of evidence:  (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5).  With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical

---

[3]  Plaintiff's application was filed after March 27, 2017.  Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). Although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . . " §§ 404.1520c(b)(3); 416.920c(b)(3).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

In this case, the ALJ summarized Dr. Twehues' evaluation report in detail. The ALJ wrote:

> That same month, the claimant underwent a psychological consultative examination with Jessica Twehues, Psy.D. . . . . The claimant reported that she had been experiencing depression for several years and she felt depressed most of the time. She noted she had reduced energy and motivation and she wanted to sleep a lot, with her also having had fleeting suicidal thoughts in the past without ever having intent or plan. She reported she worried excessively, cried easily, felt anxious most

of the time, and was easily agitated, but did not lose her temper quickly. She reported anxiety around people, feeling as though others were looking at her and talking negatively about her, and difficulty in crowded places. She reported panic attacks frequently in the past, but noted that had improved with medication. She also reported significant difficulties with focus and frequent forgetfulness. In the work setting, she noted that prior work management frequently repeated job instructions to her and would sometimes become frustrated. She noted she was never fired but indicated she would miss work once every two weeks, at the most, due to depression/anxiety. She denied a history of interpersonal problems when working, but reported she kept to herself and often found herself crying at work. As for her daily activities, the claimant reported that she spent a lot of time sleeping, but occasionally got out and watched her son play basketball. She also enjoyed watching football. She completed laundry, sometimes cooked, and showered once every four days, but did not complete much housework due to reduced motivation and her current homeless living situation. She did not drive or have a valid driver's license. She indicated that she did not have friends, but felt close with her mother and children.

Upon examination with Dr. Twehues, the claimant presented as pleasant and cooperative, but serious and quiet . . . . Her thoughts seemed logical, coherent, and goal-directed. Her mood was depressed, her affect was restricted, and her energy appeared somewhat limited, but she remained alert, responsive and oriented. She mostly maintained good eye contact, but at times seemed to be staring into space. During the interview, the claimant accurately followed all simple instructions given. Her recent and remote recall appeared adequate, but she did appear prone to mild to moderate forgetfulness with regard to instructions for complex, multi-step instructions due to some deficits with regard to concentration. The claimant seemed to track the conversation fairly well and did not appear easily distracted, but she did seem to lose her train of thought when she was speaking at times. It was indicated that the claimant appeared capable of accessing community resources as needed, though some moderate difficulty sustaining focus for prolonged periods due to depression and anxiety was noted to be expected.

(R. at 38–39.)

The ALJ also assessed and weighed Dr. Twehues' opinion as follows.

The undersigned finds the opinions of psychological consultative examiner Dr. Twehues to be persuasive in that they generally support moderate limitations in all four areas of mental functioning . . . . That said, however, the evaluation of Dr. Twehues is not entirely consistent with the evidence as treatment notes repeatedly document the claimant to have normal mental status examinations, with only occasionally observed anxiety or depression, and the claimant has repeatedly reported to her primary care provider that her medication helped both her anxiety and depression . . . . Such records support a finding that no greater limitations are warranted than those in the above residual functional capacity. Still, the

12

undersigned has considered the claimant's self-reports regarding her difficulties, along with her evaluation with Dr. Twehues. The undersigned notes that this evaluation supports a finding that the claimant would be able to perform simple, routine, and repetitive tasks, rather than more complex tasks. Her findings also support a requirement for a slower pace of work, as well as the fact that her symptomology may necessitate social functioning and adaptation limitations. However, Dr. Twehues indicated that the claimant appeared prone to higher than usual rate of absenteeism from work; however, this is not supported by anything other than the claimant's own self-report, and is certainly not supported by the overall records showing normal mental functioning.

(R. at 41–42.)

The Undersigned finds no error in the ALJ's assessment of Dr. Twehues' opinions. As the discussion above shows, the ALJ explained her supportability and consistency analysis. The ALJ explained that Dr. Twehues' opinions were persuasive to the extent Dr. Twehues opined that Plaintiff had moderate limitations in four areas of mental functioning,[4] but that Dr. Twehues' opinions were not consistent with treatment notes that repeatedly documented that Plaintiff had normal mental health status examinations. (*Id*.) The ALJ also indicated that despite those treatment records, she nevertheless considered Dr. Twehues' opinions and found that they supported limitations that were then incorporated into Plaintiff's RFC including a limitation to simple, routine, and repetitive tasks and a limitation for a slower work pace. (*Id*.) The ALJ explained, however, that Dr. Twehues' opinion that Plaintiff appeared prone to higher-than-average absenteeism was not supported by anything other than Plaintiff's self-reports and was not supported by the overall record, which showed normal mental functioning. (*Id*.) In short, the ALJ discussed the consistency and supportability factors. That is all that the relevant regulations require.

---

[4] Those four areas are 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself.

13

In addition, the ALJ's consistency and supportability analysis was supported by substantial evidence. As noted, the ALJ incorporated several of the limitations that Dr. Twehues opined into Plaintiff's RFC. But the ALJ discounted Dr. Twehues' opinion that Plaintiff appeared to be prone to excessive absenteeism for two reasons. First, the ALJ discounted that opinion because it was not supported by anything other than Plaintiff's self-reports. (*Id*.) That determination is supported by substantial record evidence. Dr. Twehues' noted that Plaintiff "reported missing work up to once every two weeks at her most recent job" and opined that Plaintiff "appears prone to higher than usual rates of absenteeism from work." (R. at 328–29.) In her examination summary, Dr. Twehues also wrote that Plaintiff reported "that she would miss work once every two weeks at the most due to depression and anxiety." (R. at 326.) Dr. Twehues nowhere indicated that her excessive absenteeism opinion was based on anything other than Plaintiff's self-reports. Accordingly, the Undersigned concludes that the ALJ did not commit reversible error when discounting Dr. Twehues' excessive-absenteeism opinion for this reason.

The ALJ also discounted the excessive-absenteeism opinion because it was not supported by the record which generally showed normal mental-health functioning. That determination is also supported by the record. Mental status examinations regularly found that Plaintiff was alert, "oriented X3," and in no acute distress. (R. at 361, 354, 442, 462, 474, 441, 470, 477, 486, 516.) Although examinations occasionally found that Plaintiff had a depressed mood (R. at 311, 288) or was anxious (R. at 387), a number of examinations found that Plaintiff had a normal mood (R. at 409, 360, 358, 288, 266, 340) and normal affect (R. at 409, 360, 358, 311, 288, 266, 340, 462). Plaintiff also denied having a depressed mood at a number of appointments (R. at 245, 463, 263,

463, 466, 16, 10, 484) and indicated that her medications improved her depression (R. at 355, 363) and her anxiety (R. at 361, 355, 350, 347, 440).

Plaintiff contends that the ALJ impermissibly relied on Plaintiff's reported activities of daily living. (ECF No. 13, at PageID # 586.) But as the discussion above demonstrates, the ALJ discredited Dr. Twehues' excessive absenteeism opinion because it was based on Plaintiff's self-reports and was not supported by medical records reflecting normal mental status examinations. The ALJ did not rely on Plaintiff's activities of daily living. (R. at 41–42.) Indeed, in support of this contention, Plaintiff cites portions of the ALJ's step two analysis considering whether Plaintiff's impairments, singly or in combination, met the "Paragraph B" criteria of Listings 12.04 and 12.06. (ECF No. 13, at PageID # 586 (citing R. at 34).) To the extent Plaintiff is attempting to challenge the ALJ's Listing Analyses at step two, this argument is underdeveloped and therefore forfeited. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.'" *Bawkey v. Comm'r of Soc. Sec.*, No. 1:17-CV-1068, 2019 WL 1052191, at *8 (W.D. Mich. Feb. 6, 2019), *report and recommendation adopted*, No. 1:17-CV-1068, 2019 WL 1044448 (W.D. Mich. Mar. 5, 2019) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

In sum, the Undersigned finds that the did not commit reversible error when considering Dr. Twehues' opinions. The ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements and the ALJ's supportability and consistency analysis was supported by substantial evidence. Although Plaintiff purports to cite other record evidence that may have supported a more limited RFC, "[a]s long as substantial evidence supports the

Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## IV.   CONCLUSION

For all the reasons contained herein, the Undersigned **RECOMMENDS** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's non-disability determination be **AFFIRMED**.

<u>**PROCEDURE ON OBJECTIONS**</u>

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . . ") (citation omitted).

Date: October 12, 2021                    /s/ *Elizabeth A. Preston Deavers*
                                          **ELIZABETH A. PRESTON DEAVERS**
                                          **UNITED STATES MAGISTRATE JUDGE**